Brooke B. Murphy
Matovich, Keller & Murphy, P.C.
2812 First Avenue North, Suite 225
P.O. Box 1098
Billings, MT  59103-1098
Telephone: (406) 252-5500
Facsimile:  (406) 252-4613
bmurphy@mkmfirm.com

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| AMERICAN ECONOMY INSURANCE COMPANY, an Indiana corporation; AMERICAN STATES INSURANCE COMPANY, an Indiana corporation; and GENERAL INSURANCE COMPANY OF AMERICA, a New Hampshire corporation. | Case No. CV-14- _____ |
| Plaintiffs, | COMPLAINT FOR DECLARATORY JUDGMENT (28 U.S.C.A. § 2201, ET SEQ.) AND REFORMATION OF POLICY |
| vs. | **JURY TRIAL REQUESTED** |
| ASPEN WAY ENTERPRISES, INC., d/b/a Aaron's Sales and Leasing, a Montana corporation; and HARTFORD FIRE INSURANCE COMPANY, a Connecticut corporation. | |
| Defendants. | |

Plaintiffs General Insurance Company of America ("General"), American Economy Insurance Company ("American Economy") (together with General, "Primary Insurers"), and American States Insurance Company ("American States" or "Umbrella Insurer") (collectively, "Insurers" or "Plaintiffs"), by their undersigned attorneys, bring this action under the Declaratory Judgment Act (22 USC § 2201, *et seq.*) against Defendants Aspen Way Enterprises, Inc., d/b/a Aaron's Sales and Leasing ("Aspen Way") and Hartford Fire Insurance Company ("Hartford Fire") and allege as follows:

## NATURE OF THE ACTION

1.      This is an insurance coverage action.

2.      Defendant Aspen Way is a franchisee of Aaron's Inc. ("Aaron's") and is in the business of operating rent-to-own ("RTO") stores in Montana, Washington, Colorado, Wyoming, and Idaho.  As part of its business, Aspen Way rents and sells computers to members of the public which come pre-loaded with computer software.  Members of the public can then enter into RTO lease agreements with Aspen Way for the purchase of computers.

3.      General issued a commercial general liability policy to Aspen Way with a policy period of January 1, 2010 to January 1, 2011 (the "2010 Primary Policy").  The 2010 Primary Policy is attached as Ex. A.  American Economy issued renewal commercial general liability policies to Aspen Way with policy

periods of January 1, 2011 to January 1, 2012 (the "2011 Primary Policy"), Ex. B, and January 1, 2012 to January 1, 2013 (the "2012 Primary Policy"), Ex. C, (collectively and together with the 2010 Primary Policy, the "Primary Policies"). American States issued umbrella policies to Aspen Way with policy periods January 1, 2010 to January 1, 2011 (the "2010 Umbrella Policy"), Ex. D, January 1, 2011 to January 1, 2012 (the "2011 Umbrella Policy"), Ex. E, and January 1, 2012 to January 1, 2013 (the "2012 Umbrella Policy"), Ex. F, (collectively, the "Umbrella Policies").

4.      In May, 2011, Crystal Byrd and Brian Byrd, individually and on behalf of a class consisting of all customers of Aaron's and its franchisees, sued Aspen Way, Aaron's, and other Aaron's franchisees in the United States District Court for the Western District of Pennsylvania (the "Byrd Action").  In May, 2013, the Byrd Action plaintiffs filed their Third Amended Complaint, alleging that their electronic communications and/or images were intercepted, accessed, monitored, and/or transmitted by a spying device or software without authorization or permission off of computers they purchased, leased, rented, or RTO from Aaron's or its franchisees, including Aspen Way.

5.      In October, 2013, the State of Washington sued Aspen Way in Spokane County Superior Court, Washington alleging that Aspen Way rented laptops preloaded with spying devices or software to Washington consumers (the

"Washington Action") (together with the Byrd Action, the "Underlying Actions"). The State of Washington alleged that the software on the rental laptops gave Aspen Way the ability to record a monitored laptop user's keystrokes and on-screen images, take photographs using the computer's webcam, and monitor the physical location of the computer without notice to the computer's user.

6.      Insurers bring this action for a declaration that they have no duty to defend or indemnify Aspen Way against the Underlying Actions.

7.      American States also seeks to reform the 2010 and 2011 Umbrella Policies.

## PARTIES

8.      Plaintiff General is a New Hampshire corporation with its principal place of business in Boston, Massachusetts.

9.      Plaintiff American Economy is an Indiana corporation with its principal place of business in Boston, Massachusetts.

10.     Plaintiff American States is an Indiana corporation with its principal place of business in Boston, Massachusetts.

11.     Defendant Aspen Way is a Montana corporation with its principal place of business in Billings, Montana.  Aspen Way is in the business of renting and selling computers which come pre-loaded with computer software and is the named insured under the Primary and Umbrella Policies.

12.     Hartford Fire is a Connecticut corporation with its principal place of business in Hartford, Connecticut.  On information and belief, Hartford Fire issued a primary commercial general liability policy to Aspen Way during the policy periods immediately preceding Insurers' policy periods.  Hartford Fire issued its first such primary general liability policy on October 11, 2006, and the policy period for that policy extended to October 11, 2007 (the "2006 Hartford Fire Policy").  On information and belief, this policy was renewed on October 11, 2007 (the "2007 Hartford Fire Policy").  On information and belief, this policy was rewritten for the January 1, 2008 to January 1, 2009 policy period (the "2008 Hartford Fire Policy").  On information and belief, this policy was renewed on January 1, 2009 (the "2009 Hartford Fire Policy") (together with the 2006 Hartford Fire Policy, 2007 Hartford Fire Policy, and 2008 Hartford Fire Policy, the "Hartford Fire Policies").  Insurers seek no separate relief against Hartford Fire in this action.  Hartford Fire is joined as a party so that it is bound by the rulings of this action, with respect to Insurers' Primary Policies and Umbrella Policies.

## JURISDICTION AND VENUE

13.     This Court has jurisdiction over this matter pursuant to 28 U.S.C.A. § 1332 because this action is between citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

14.     Defendant Aspen Way does business and resides in this district out of which the causes of action in this case arise.  Aspen Way therefore is subject to personal jurisdiction in this district, and venue is proper in this district under 28 U.S.C.A. § 1391 and Mont. Code Ann. § 25-2-121.

## FACTS

**I.      The Underlying Complaints.**

   **A.      The Byrd Action.**

15.     Plaintiffs, Crystal and Brian Byrd, on behalf of a putative class, originally initiated the Byrd Action in May, 2011.  The Third Amended Class Action Complaint in the Byrd Action was filed on May 23, 2013.  The Third Amended Complaint names as Defendants Aaron's, many of its franchisees (including Aspen Way), and DesignerWare, LLC.  A copy of the Byrd Action Third Amended Complaint is attached hereto as Ex. G.

16.     The putative class consists of all U.S. customers of Aaron's and its franchisees, who purchased, leased, rented or RTO computers from Aaron's and had their electronic communications and/or images intercepted, monitored, or transmitted by PC Rental Agent without authorization or permission.  (*Id*. ¶¶ 1, 71.)

17.     The Byrd Action Third Amended Complaint alleges that Aaron's suggested franchisees use DesignerWare's PC Rental Agent starting in 2007.  (*Id*. ¶ 82.)  It then claims that franchisees purchased and installed PC Rental Agent

since at least June 2009.  (*Id.* ¶ 83.)  PC Rental Agent allows franchisees to remotely and surreptitiously access, monitor, intercept, and/or transmit personal information from purchased or rented computers.  (*Id.* ¶ 84.)  Through PC Rental Agent, franchisees could remotely install "Detective Mode" on RTO computers, which enables installers to secretly take photographs with RTO computer webcams, capture keystrokes, and take screen shots.  (*Id.* ¶¶ 88, 89.)  The surveillance was sent from a DesignerWare server in Pennsylvania to installers via email.  (*Id.* ¶¶ 11, 89.)

18.    The Byrd Action Third Amended Complaint further alleges that on September 2, 2010, Aaron's Vice President Scott Harvey and other executive officers were advised that the use of PC Rental Agent by franchisees was very intrusive.  (*Id.* ¶ 101.)  Aaron's revoked its consent to franchisees' use of PC Rental Agent and took steps to close the portal allowing franchisees access to PC Rental Agent in December, 2011.  (*Id.* ¶ 144.)  The last transmission to pass through Aaron's corporate servers occurred in January, 2012.  (*Id.* ¶ 145.)

19.    The Byrd Action Third Amended Complaint alleges facts specific to Crystal and Bryan Byrd.  It alleges that on July 30, 2010, Crystal Byrd entered a RTO lease for a Dell Inspiron 14" laptop.  (*Id.* ¶ 118.)  The lease called for three payments by November 15, 2010, in order to purchase the computer.  (*Id.*)  The Byrds paid off the lease in full on October 1, 2010.  (*Id.* ¶ 120.)  Due to an apparent

accounting glitch, Aspen Way deemed the Byrds to have defaulted and initiated Detective Mode on the Byrds' laptop on November 16, 2010 at 10:51 p.m. and kept it running through December 20, 2010.  (*Id*. ¶ 121.)  On December 20, 2010 at 3:00 p.m. Detective Mode took a photograph and screenshot of Brian Byrd using the laptop.  (*Id*. ¶ 122.)  Aspen Way's Casper store manager, Christopher Mendoza, went to the Byrds' home on December 22, 2010, and incorrectly claimed the Byrds were in default on the computer.  (*Id*. ¶ 124.)  In support of his collection efforts, Mendoza showed Byrd a picture captured with Detective Mode.  (*Id*.)

20.     The Byrd Action Third Amended Complaint asserts three counts against Aspen Way.  Count I claims franchisees violated the Electronic Communications Privacy Act, 18 U.S.C.A. § 2511 (the "ECPA") by intentionally intercepting, disclosing, and using plaintiffs' communications without knowledge, authorization, or consent.  Count II alleges invasion of privacy through engaging in "the intentional intrusion on the seclusion of plaintiffs' and [defendants'] customers' private concerns."   Count III claims conspiracy on the part of DesignerWare, franchisees, and Aaron's, in that two or more of them acted with a common purpose to commit the tort of intrusion on seclusion, invade the privacy of the plaintiffs, and violate the ECPA.  The Byrd Action Third Amended Complaint also alleges, as a fourth count, aiding and abetting against Aaron's only.

21.     In May, 2011, Aspen Way sought coverage for the Byrd Action under the Primary Policies.  After reviewing the tendered claims and information provided by Aspen Way, on June 22, 2011, General accepted the defense of the Byrd Action under a complete reservation of rights.  General specifically notified Aspen Way that it reserved the right to seek reimbursement of defense costs for uncovered claims.  This letter is attached as Ex. H.

22.     On information and belief, Aspen Way sought coverage for the Byrd Action under the Hartford Fire Policies.  On information and belief, Hartford Fire accepted the defense of the Byrd Action under a complete reservation of rights.

**B.     The Washington Action.**

23.     The State of Washington filed the Washington Action Complaint against Aspen Way on October 18, 2013, in Spokane County, Washington.  A copy of the Washington Action Complaint is attached hereto as Ex. I.

24.     In the Washington Action Complaint, the State of Washington alleges the following: Aspen Way operates RTO stores in Washington and rents laptops to members of the public, which come pre-loaded with computer software known as PC Rental Agent.  (Ex. I ¶ 4.1.)  PC Rental Agent makes it possible to later install the optional feature known as Detective Mode at the RTO store's discretion.  (*Id.*)  Aspen installed these software programs on its rental laptops in order to track their customers' whereabouts.  (*Id.* ¶ 4.2.)  Installing PC Rental Agent and Detective

Mode software programs also gives Aspen Way the ability to record a monitored laptop user's keystrokes and on-screen images, and to take photographs using the computer's webcam. (*Id.*) The physical location of the computer can also be monitored. All of this is done without notice to the computer's user. (*Id.*)

25. The State of Washington further alleges that all ten of Aspen Way's Washington locations purchased PC Rental Agent software licenses. (*Id.* ¶ 4.3.) Aspen Way stores requested installation and activation of the Detective Mode Feature on rented laptops running PC Rental Agent on at least 53 occasions since November, 2010. (*Id.* ¶ 4.4.) Once Detective Mode had been installed, Aspen Way's Director of Operations activated the various stages of Detective Mode at will. (*Id.* ¶¶ 4.4, 4.6.) The PC Rental Agent and Detective Mode software relayed personally identifiable information to Aspen Way's Washington RTO stores via e-mail, without the knowledge or consent of the laptop users or laptop renters. (*Id.* ¶¶ 4.7-4.8.)

26. Based on these allegations, the State of Washington asserts four causes of action: (1) Misrepresentation in Violation of the Consumer Protection Act (RCW 19.86.020); (2) Deceptive Collection of Personally Identifiable Information in Violation of the Computer Spyware Act (RCW 19.270.020(2)); (3) Deceptive Prevention of Efforts to Block the Functioning of Computer Software in Violation of the Computer Spyware Act (RCW 19.270.020(3) and

RCW 19.270.020(11)(a)-(b)); and (4) Unfair Collection and Disclosure of Private and Confidential Information (RCW 19.86.020).  (*Id.* ¶¶ 5.1-8.4.)  In doing so, the State of Washington seeks declaratory and injunctive relief, civil penalties under the Consumer Protection Act, damages pursuant to the Computer Spyware Act (up to $100,000 per violation), restitution to consumers, and attorney's fees and costs. (*Id.* ¶¶ 9.3-9.6.)

27.     Aspen Way tendered its claim on September 26, 2013, following email correspondence from the Washington Attorney General's Office stating that it intended to file suit.  Aspen Way tendered its claim again on October 29, 2013, after the filing of the Washington Action Complaint.  After reviewing the tendered claims and information provided by Aspen Way, on December 17, 2013, General and American Economy accepted the defense of the Washington Action under a complete reservation of rights.  General and American Economy specifically notified Aspen Way that it reserved the right to seek reimbursement of defense costs for uncovered claims.  This letter is attached as Ex. J.

## II.      Relevant Terms and Conditions of the Primary Policies.

28.     The relevant terms of the 2011 and 2012 Primary Policies are identical to the relevant terms of the 2010 Primary Policy.  To the extent Aspen Way seeks coverage under the 2011 or 2012 Primary Policies, Insurers seek a declaration regarding coverage under those policies as well.

29.   Coverage Part A of the Primary Policies provides as follows:

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.  Insuring Agreement**

    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" to "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

        **(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

        **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

    **b.** This insurance applies to "bodily injury" and property damage" only if:

        **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

> **(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** - Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part.  If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

30.     Thus, Coverage Part A of the Primary Policies only covers "bodily injury" and "property damage."  "Bodily injury" and "property damage" are defined in the Primary Policies as follows:

> **3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.
>
> *       *       *
>
> **17.** "Property damage" means:
>
> **a.** Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>
> **b.** Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.
>
> For the purposes of this insurance, electronic data is not tangible property.
>
> As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or

transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

31.     Under Coverage Part A of the Primary Policies, coverage is provided only for sums the insured becomes legally obligated to pay because of "bodily injury" or "property damage."  The Underlying Actions do not seek damages for "bodily injury" or "property damage" as defined by the plain language of the Primary Policies.

32.     Coverage Part B of the Primary Policies provides as follows:

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

**1.  Insurance Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.  We may, at our discretion, investigate any offense and settle any claim or "suit" that may result.  But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend and when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

33.     Thus, Coverage Part B of the Primary Policies only covers "personal and advertising injury." "Personal and advertising injury" is defined in the Primary Policies as follows:

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

34.     "Advertisement" is defined in the Primary Policies as follows:

   **1.**  "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters.  For the purposes of this definition:

   **a.**  Notices that are published include material placed on the Internet or on similar electronic means of communication; and

   **b.**  Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

35.     Under Coverage Part B of the Primary Policies, coverage is provided only for sums the insured becomes legally obligated to pay because of "personal and advertising injury."  The gravamen of the Underlying Actions is Aspen Way's alleged access of personal information without its customers' consent.  The Underlying Actions do not seek damages for "personal and advertising injury" as defined by the Primary Policies

36.     Thus, Primary Insurers have no duty to defend or indemnify Aspen Way against the Underlying Actions.

## III.   The Primary Policies' Coverage Exclusions.

37.     Even if the Underlying Actions sought damages for "bodily injury" or "property damage" as defined by the Primary Policies under Coverage A, coverage

for the Underlying Actions would be barred by relevant exclusions in the Primary

Policies.

38. The Primary Policies contain, among others, the following Coverage

A exclusions:

### 2. Exclusions

This insurance does not apply to:

### a. Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

\*       \*       \*

### k. Damage To Your Product

"Properly damage" to "your product" arising out of it or any part of it.

\*       \*       \*

### p. Electronic Data

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

39.     Each of the claims alleged in the Underlying Actions is barred by one or more of the above Coverage A exclusions.

40.     Even if the Underlying Actions sought damages for "personal and advertising injury" as defined by the Primary Policies under Coverage B, coverage for the Underlying Actions would be barred by relevant exclusions in the Primary Policies.

41.     The Primary Policies contain, among others, the following Coverage B exclusions:

### 2. Exclusions

This insurance does not apply to:

### a. Knowing Violation Of Rights Of Another

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

\*       \*       \*

### c. Material Published Prior To Policy Period

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

\*       \*       \*

### p. Recording And Distribution Of Material Or Information In Violation Of Law[1]

---

[1]     This exclusion was amended by endorsement (CG 00 68 05 09).

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

* * *

(4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

42. Each of the claims alleged in the Underlying Actions is barred by one or more of the above Coverage B exclusions.

43. In particular, the Underlying Actions allege knowing, willful and deliberate conduct. For example, the Byrd Action Third Amended Complaint alleges willful and deliberate conduct with respect to the counts for violation of the ECPA ("Defendants have intentionally intercepted and/or procured to be intercepted Plaintiffs' and Class members' electronic communications"; *see also* Ex. G ¶¶ 156, 158-160), invasion of privacy ("intentional intrusion on the seclusion of plaintiffs' and their customers' private concerns"); *see also id.* ¶¶ 171-72), and conspiracy ("conduct of these Defendants was *per se*, malicious as they acted in concert to commit unlawful acts"). Similarly, the Washington Action Complaint alleges that Aspen Way acted "with actual knowledge of Detective Mode's capabilities." (Ex. I ¶ 4.5; *see also id.* ¶¶ 6.3, 7.2.) Thus, coverage for those claims is barred by **Exclusion a** (Knowing Violation Of Rights Of Another).

44.     Additionally, **Exclusion c** (Material Published Prior To Policy Period) applies to exclude coverage where the first publication resulting in personal or advertising injury took place before the beginning of the policy period.  Upon information and belief, Aspen Way also has tendered the Byrd Action to its previous insurer, Hartford Fire, and alleged that the injury at issue occurred during Hartford Fire's policy periods.  To the extent that the conduct that is the subject of the Underlying Actions first took place prior to the inception date of the Primary Policies, coverage is excluded.

45.     Finally, **Exclusion p** (Recording And Distribution Of Material Or Information In Violation Of Law) also precludes coverage for certain claims.  The Byrd Action Third Amended Complaint alleges that Aspen Way violated the ECPA in Count I by intentionally intercepting electronic communication.  (Ex. G, ¶ 155.) In addition, each count of the Washington Action Complaint alleges a statutory violation that falls within Exclusion p.  Counts I, II, III, and IV all allege that Aspen Way violated a state statute due to transmitting, collecting, disseminating, and distributing information.  (Ex. I ¶¶ 5.2, 6.2, 7.3, 8.2.)

46.     The Primary Policies contain obligations of Aspen Way in the event of an occurrence, offense, claim, or suit.  The Primary Policies state in relevant part as follows:

### SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

\*        \*        \*

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

    **a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim.  To the extent possible, notice should include:

        **(1)** How, when and where the "occurrence" or offense took place;

        **(2)** The names and addresses of any injured persons and witnesses; and

        **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

    **b.** If a claim is made or "suit" is brought against any insured, you must:

        **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

        **(2)** Notify us as soon as practicable.

        You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

    **c.** You and any other involved insured must:

        **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

        **(2)** Authorize us to obtain records and other information;

        **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

        **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to

the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

## IV.   Hartford Fire Policies.

47.   On information and belief, the Hartford Fire Policies contain

substantially similar language as the Primary Policies.

## V.   Relevant Terms and Conditions of the Umbrella Policies.

48.   The Umbrella Policies provide as follows:

### SECTION I. – COVERAGE

**A.** We will pay those sums that the insured becomes legally obligated to pay as "ultimate net loss," including liability assumed by the insured in an "insured contract," because of:

**1.** "Bodily injury" or "property damage," or

**2.** "Personal injury," or

**3.** "Advertising injury"

which takes place during the policy period and in the policy territory and is caused by an "occurrence."

**B.** We will have the right and duty to defend the insured against any "suit" seeking those damages, however, we will have no duty to defend the insured against any "suit" seeking damages to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result, but:

**1.** The amount we will pay for damages is limited as described in Section **V**, LIMITS OF INSURANCE; and

    **2.** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of "ultimate net loss".

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Section **VI**, PAYMENT OF DEFENSE COSTS.

49.    Thus, the Umbrella Policies cover "advertising injury,"  "bodily injury," "personal injury," or "property damage."  These terms are defined in the Umbrella Policies as follows:

    **B.** "Advertising injury" means injury arising out of one or more of the following offenses committed in the course of advertising your goods, products, or services:

        **1.** Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

        **2.** Oral or written publication of material that violates a person's right of privacy;

        **3.** Appropriation, without permission of the advertising ideas of others;

        **4**. Passing off your goods, products or services as those of another by misleading others to believe your goods, products or services are those of another; or

        **5.** Infringement of copyright, title or slogan.

*      *      *

    **F.** "Bodily injury" means bodily injury, sickness or disease, mental injury, mental anguish, sustained by a person, including death, resulting from any of these at any time.

*      *      *

**N.** "Personal injury" means injury other than "bodily injury" arising out of one or more of the following offenses:

    **1.** False arrest, detention, or imprisonment;

    **2.** Malicious prosecution;

    **3.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

    **4**. Oral or written publication of material in any manner that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

    **5.** Oral or written publication in any manner of material that violates a person's right of privacy.

"Personal Injury" does not include advertising, publishing, broadcasting or telecasting by or for you.

*    *    *

**Q.** "Property damage" means:

    **1.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss shall be deemed to occur at the time of the occurrence that caused it;

    **2.** Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the occurrence that caused it; or

    **3.** With respect to "automobiles", "property damage" also includes "pollution cost or expense", but only to the extent that coverage exists in either the "scheduled underlying insurance" or "unscheduled underlying insurance" or would have existed except for the exhaustion of the underlying limits of insurance.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

50.     Under the Umbrella Policies, coverage is provided only for sums the insured becomes legally obligated to pay because of "advertising injury," "bodily injury," "personal injury," or "property damage."  The Underlying Actions do not seek damages for "advertising injury,"  "bodily injury," "personal injury," or "property damage" as defined by the plain language of the Umbrella Policies.

51.     Even if the Underlying Actions sought damages for "advertising injury," "bodily injury," "personal injury," or "property damage," as defined by the Umbrella Policies, coverage for the Underlying Actions would be barred by relevant exclusions in the Umbrella Policies.  The Umbrella Policies contain, among others, the following exclusions:

### SECTION III. – EXCLUSIONS

This policy does not apply to:

**A.** "Bodily injury" or '"property damage" expected or intended from the standpoint of the insured.  This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

*       *       *

**N.** "Personal injury" or "advertising injury"

**1.** Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal injury" or "advertising injury";

**2.** Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

**3.** Arising out of oral or written publication of materials whose first publication took place before the beginning of the policy period;

**4.** Arising out of the willful violation of a penal statue or ordinance committed by or with the consent of the insured;

**5.** For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement;

**6.** Infringement of copyright, title, slogan, patent, trademark, trade secrets or other intellectual property rights, but this paragraph does not apply to infringement, in your "advertisement" of copyright, trade dress or slogan;

**7.** Arising out of an electronic chat room or bulletin board the insured hosts, owns or over which the insured exercises control; or

**8.** Arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

\*       \*       \*

**X.**  Any damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media that are used with electronically controlled equipment.

52.    In addition, the 2010 and 2011 Umbrella Policies contain Form

Endorsement 21 64 02 09, which states:

RECORDING AND DISTRIBUTION OF MATERIAL OR INFORMATION IN VIOLATION OF LAW EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA LIABILITY COVERAGE FORM

This insurance does not apply to any claim, loss or "suit" resulting from:

**1**.  "Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

*       *       *

**d.**  Any federal, state or local statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, or FCRA and their amendments and additions, that collection, recording, sending, transmitting, communicating or distribution of material or information [sic].

**2.** "Personal injury" or "advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

\*       \*       \*

**d.** Any federal, state or local statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, or FCRA and their amendments and additions, that collection, recording, sending, transmitting, communicating or  distribution of material or information [sic].

53.     As explained below in Count III, Paragraphs 1(d) and 2(d) of Form Endorsement 21 64 02 09 contain an inadvertent error because they omit certain words which both American States and Aspen Way understood should have been included.  More specifically, Paragraphs 1(d) and 2(d) were intended to contain the language set forth in Paragraphs 1(d) and  2(d) of Form Endorsement 21 64 07 11 of the 2012 Umbrella Policy, which is set forth below in Paragraph 55.

54.     The 2012 Umbrella Policy contains Form Endorsement 21 64 07 11, which states:

RECORDING AND DISTRIBUTION OF MATERIAL OR INFORMATION IN VIOLATION OF LAW EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA LIABILITY COVERAGE FORM

This insurance does not apply to any claim, loss or suit resulting from:

   **1.**  Bodily injury or property damage arising directly or indirectly out of any action or omission that violates or is alleged to violate:

\*     \*     \*

      **d.**  Any federal, state or local statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, or FCRA and their amendments and additions, that ***addresses, prohibits or limits the printing, dissemination, disposal***[2], collecting, recording, sending, transmitting, communicating or distribution of material or information.

   **2.**  Personal injury or advertising injury arising directly or indirectly out of any action or omission that violates or is alleged to violate:

\*     \*     \*

      **d.**  Any federal, state or local statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, or FCRA and their amendments and additions, that ***addresses, prohibits, or limits the printing, dissemination, disposal***, collecting, recording, sending, transmitting, communicating or distribution of material or information.

    55.    For the reasons stated above, each of the claims alleged in the Underlying Actions is barred by one or more of the above exclusions and/or Endorsements.

    56.    The Umbrella Policies contain obligations of Aspen Way in the event of an occurrence, claim, or suit.  The Umbrella Policies state in relevant part as follows:

---

[2]  Emphasis added unless otherwise indicated.

## SECTION IV – CONDITIONS

\*       \*       \*

**B.** DUTIES IN THE EVENT OF OCCURRENCE, CLAIM OR "SUIT"

**1.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense, regardless of the amount, which may result in a claim.  To the extent possible, notice should include:

    **a.** How, when and where the "occurrence" or offense took place;

    **b.** The names and addresses of any injured persons and witnesses; and

    **c.** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**2.** If a claim is made or "suit" is brought against any insured, you must:

    **a.** Immediately record the specifics of the claim or "suit" and the date received; and

    **b.** Notify us as soon as practicable, and see to it that we receive written notice of the claim or "suit" as soon as practicable.

    **c.** You shall also notify us whenever you obtain information that the obligations of the "underlying insurers" to investigate, defend, pay on behalf of or indemnify you has ceased.

**3.** You and any other involved insured must:

    **a.** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit,"

    **b.** Authorize us to obtain records and other information;

   **c.** Cooperate with us in the investigation, settlement of the claim or defense against the "suit," and

   **d.** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**4.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**5.** Knowledge of an "occurrence", claim or "suit" by your agent, servant or employee shall not in itself constitute knowledge of the named insured unless an officer of the named insured has received such notice from the agent, servant or employee.

## <u>COUNT I</u>

## <u>DECLARATORY JUDGMENT AS TO THE PRIMARY POLICIES</u>

57.    Insurers reallege and incorporate each of the preceding paragraphs as though fully set forth herein.

58.    Under Coverage Part A of the Primary Policies, coverage is provided only for sums the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" caused by an "occurrence" during the policy period.  The Underlying Actions do not seek damages for "bodily injury" or "property damage" as defined by the plain language of the Primary Policies.  Thus, under Coverage Part A, Primary Insurers have no duty to defend or indemnify Aspen Way against the Underlying Actions.

59.     Under Coverage Part B of the Primary Policies, coverage is provided only for sums the insured becomes legally obligated to pay as damages because of "personal and advertising injury."  The Underlying Actions do not seek damages for "personal and advertising injury" as defined by the plain language of the Primary Policies.  Thus, under Coverage Part B, Primary Insurers have no duty to defend or indemnify Aspen Way against the Underlying Actions.

60.     Alternatively, even if the Underlying Actions sought sums for "bodily injury" or "property damage," coverage for the Underlying Actions is barred by one or more of the terms, conditions, or exclusions in the Primary Policies.

61.     Alternatively, even if the Underlying Actions sought damages for "personal and advertising injury," coverage for the Underlying Actions is barred by one or more of the terms, conditions, or exclusions in the Primary Policies.

WHEREFORE, Primary Insurers requests that this Court enter an Order:

A.     Declaring that the Primary Policies do not owe a duty to defend or indemnify Aspen Way in relation to the Underlying Actions.

B.     Directing Aspen Way to reimburse Primary Insurers for sums paid in defense of the Underlying Actions.

# COUNT II

# DECLARATORY JUDGMENT AS TO THE UMBRELLA POLICIES

62.     Insurers reallege and incorporate each of the preceding paragraphs as though fully set forth herein.

63.     Under the Umbrella Policies, coverage is provided only for sums the insured becomes legally obligated to pay as "ultimate net loss" because of "bodily injury," "property damage," "personal injury," or "advertising injury" caused by an "occurrence" during the policy period.  The Underlying Actions do not seek ultimate net loss for "bodily injury," "property damage," "personal injury" or "advertising damage" as defined by the plain language of the Umbrella Policies. Thus, under the Umbrella Policies, Umbrella Insurers have no duty to defend or indemnify Aspen Way against the Underlying Actions.

64.     Alternatively, even if the Underlying Actions sought damages for "bodily injury," "property damage," "personal injury," or "advertising injury," coverage for the Underlying Actions is barred by one or more of the terms, conditions, or exclusions in the Umbrella Policies.

WHEREFORE, Umbrella Insurer requests that this Court enter an Order declaring that it does not owe a duty to defend or indemnify Aspen Way in relation to the Underlying Actions.

## COUNT III

## REFORMATION OF THE 2010 AND 2011 UMBRELLA POLICIES

65.     Insurers reallege and incorporate each of the preceding paragraphs as though fully set forth herein.

66.     The 2010 and 2011 Umbrella Policies contain, by Form Endorsement 21 64 02 09, an exclusion for "Recording and Distribution of Material or Information in Violation of Law," which contains a typographical error.  The Endorsement reads as follows:

> RECORDING AND DISTRIBUTION OF MATERIAL OR INFORMATION IN VIOLATION OF LAW EXCLUSION
>
> This endorsement modifies insurance provided under the following:
>
> COMMERCIAL UMBRELLA LIABILITY COVERAGE FORM
>
> This insurance does not apply to any claim, loss or "suit" resulting from:
>
> **1**.  "Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:
>
> *      *      *
>
> **d.**  Any federal, state or local statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, or FCRA and their amendments and additions, that collection, recording, sending, transmitting, communicating or distribution of material or information [sic].

**2.**    "Personal injury" or "advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

*        *        *

**d.**    Any federal, state or local statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, or FCRA and their amendments and additions, that collection, recording, sending, transmitting, communicating or distribution of material or information [sic].

67.    Paragraphs 1(d) and 2(d) of Form Endorsement 21 64 02 09 should

have read as follows:

RECORDING AND DISTRIBUTION OF MATERIAL OR INFORMATION IN VIOLATION OF LAW EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA LIABILITY COVERAGE FORM

This insurance does not apply to any claim, loss or suit resulting from:

**1.**    Bodily injury or property damage arising directly or indirectly out of any action or omission that violates or is alleged to violate:

*        *        *

**d.**    Any federal, state or local statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, or FCRA and their amendments and additions, that ***addresses, prohibits or limits the printing, dissemination, disposal***, collecting, recording, sending, transmitting, communicating or distribution of material or information.

    **2.** Personal injury or advertising injury arising directly or indirectly out of any action or omission that violates or is alleged to violate:

*      *      *

    **d.** Any federal, state or local statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, or FCRA and their amendments and additions, that ***addresses, prohibits, or limits the printing, dissemination, disposal***, collecting, recording, sending, transmitting, communicating or distribution of material or information.

68.    The 2012 Umbrella Policy fixed the typographical errors by Form Endorsement 21 64 07 11, an exclusion for "Recording and Distribution of Material or Information in Violation of Law," which states:

**RECORDING AND DISTRIBUTION OF MATERIAL OR INFORMATION IN VIOLATION OF LAW EXCLUSION**

This endorsement modifies insurance provided under the following:

    COMMERCIAL UMBRELLA LIABILITY COVERAGE FORM

This insurance does not apply to any claim, loss or suit resulting from:

    **1.** Bodily injury or property damage arising directly or indirectly out of any action or omission that violates or is alleged to violate:

*      *      *

    **d.** Any federal, state or local statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, or FCRA and their amendments and additions, that

> ***addresses, prohibits or limits the printing,
> dissemination, disposal,*** collecting, recording, sending,
> transmitting, communicating or distribution of material
> or information.

2. Personal injury or advertising injury arising directly or
   indirectly out of any action or omission that violates or is
   alleged to violate:

   \*      \*      \*

   d. Any federal, state or local statute, ordinance or
      regulation, other than the TCPA or CAN-SPAM Act of
      2003, or FCRA and their amendments and additions, that
      ***addresses, prohibits, or limits the printing,
      dissemination, disposal***, collecting, recording, sending,
      transmitting, communicating or distribution of material
      or information.

69.    The absence of the phrase "addresses, prohibits or limits the printing,
dissemination, disposal" ("Omitted Phrase") from Paragraphs 1(d) and 2(d) of the
endorsements in the 2010 and 2011 Umbrella Policies was a scrivener's error
and/or a mutual mistake.  Both Umbrella Insurer and Aspen Way intended Form
Endorsement 21 64 02 09 to include the Omitted Phrase like Form Endorsement 21
64 07 11.

70.    The Parties' understanding of Form Endorsement 21 64 02 09 in the
2010 and 2011 Umbrella Policies is set forth in a "Notice To Policyholders"
attached to those policies that discusses the endorsement containing this exclusion.
The Notice explains that the new endorsement "will more explicitly exclude
liability coverage for  . . . injury arising out of any action or omission that violates

or is alleged to violate . . . any other similar federal, state or local statutes, ordinance or regulation concerning disposal and dissemination of personal information."

71.    The 2012 Umbrella Policy also contains this Notice.  However, the 2012 policy also contains a separate "Notice" that is different.  It states that the revised exclusion "adds language that was mistakenly omitted in the original version" of the endorsement.  The Notice also explains that the exclusion "will more explicitly exclude liability coverage for bodily injury, property damage, personal injury and advertising injury arising out of any action or omission that violates, or is alleged to violate, any other similar federal, state or local statute, ordinance or regulation that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information."

72.    Umbrella Insurer contends that Form Endorsement 21 64 02 11 and the Notices contained in the policies are sufficiently clear evidence of the parties' intent to include the Omitted Phrase in Form Endorsement 21 64 02 09.

WHEREFORE, to avoid any dispute on this point, Umbrella Insurer prays for a declaration regarding the interpretation of Form Endorsement 21 64 02 09 to this effect, or, alternatively, reformation of Form Endorsement 21 64 02 09 to effectuate the parties' intent.

## **Jury Demand**

Insurers request a trial by jury on all issues so triable.

DATED this 22nd day of January, 2014.

### **MATOVICH, KELLER, & MURPHY, P.C.**

By:     /s/ Brooke B. Murphy
           Brooke B. Murphy
           Matovich, Keller & Murphy, P.C.
           2812 First Avenue North, Suite 225
           P.O. Box 1098
           Billings, MT  59103-1098
           Telephone: (406) 252-5500
           Facsimile:  (406) 252-4613
           bmurphy@mkmfirm.com

           *Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this <u>22nd</u> day of January, 2014, a copy of the foregoing was served on the following persons by the following means:

| 1 | CM/ECF | | Fax |
| --- | --- | --- | --- |
| | Hand Delivery | | E-Mail |
| | Mail | | Overnight Delivery Service |

**1.     Clerk, U.S. District Court**

**Attorneys for Plaintiffs**
**2.**    Matthew O. Sitzer
         Amy Y. Cho
         GRIPPO & ELDEN, LLC
         111 S. Wacker Drive
         Chicago, IL  60606
         Phone: (312) 704-7700
         Facsimile: (312_ 558-1195
         msitzer@grippoelden.com
         acho@grippoelden.com
         *(pro hac vice admission pending)*

**MATOVICH, KELLER & MURPHY P.C.**

By:    /s/ Brooke B. Murphy
       Brooke B. Murphy
       Matovich, Keller & Murphy P.C.
       *Attorneys for Plaintiffs*