Brooke B. Murphy
MATOVICH, KELLER & MURPHY, P.C.
2812 First Avenue North, Suite 225
Billings, MT 59103
Phone: (406) 252-5500
Facsimile: (406) 252-4613
bmurphy@mkmfirm.com

Matthew O. Sitzer (*pro hac vice*)
Amy Y. Cho (*pro hac vice*)
SHOOK, HARDY & BACON L.L.P.
111 S. Wacker Drive
Chicago, IL 60606
Phone: (312) 704-7700
Facsimile: (312) 558-1195
msitzer@shb.com
acho@shb.com

*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# BILLINGS DIVISION

| | |
|---|---|
| AMERICAN ECONOMY INSURANCE COMPANY, an Indiana corporation; AMERICAN STATES INSURANCE COMPANY, an Indiana corporation; and GENERAL INSURANCE COMPANY OF AMERICA, a New Hampshire corporation.<br><br>Plaintiffs,<br><br>vs.<br><br>ASPEN WAY ENTERPRISES, INC., d/b/a Aaron's Sales and Leasing, a Montana corporation; and HARTFORD FIRE INSURANCE COMPANY, a Connecticut corporation. | Case No. CV-14-9-BLG-SPW<br><br>PLAINTIFFS' STATEMENT OF UNDISPUTED FACTS |

| | |
|---|---|
| Defendants | |
| HARTFORD FIRE INSURANCE COMPANY,<br><br>    Counterclaimant and Crossclaim Plaintiff,<br><br>vs.<br><br>AMERICAN ECONOMY INSURANCE COMPANY, AMERICAN STATES INSURANCE COMPANY, GENERAL INSURANCE COMPANY FO AMERICAN and ASPEN WAY ENTERPRISES, INC.,<br><br>    Counterclaim and Crossclaim Defendants. | |
| ASPEN WAY ENTERPRISES, INC., d/b/a Aaron's Sales and Leasing,<br><br>    Cross-Claimant,<br><br>vs.<br>HARTFORD FIRE INSURANCE COMPANY,<br><br>    Cross-Defendant. | |
| HARTFORD CASUALTY INSURANCE COMPANY,<br><br>    Intervenor-Plaintiff, | |

vs.

AMERICAN ECONOMY INSURANCE COMPANY, AMERICAN STATES INSURANCE COMPANY, GENERAL INSURANCE COMPANY OF AMERICA and ASPEN WAY ENTERPRISES, INC.

Defendants to Intervenor Complaint.

Pursuant to Local Rule 56.1, Plaintiffs General Insurance Company of America ("General"), American Economy Insurance Company ("American Economy"), and American States Insurance Company ("American States") (collectively, "Liberty" or "Liberty Mutual") submit their Statement of Facts in support of their motion for summary judgment against Aspen Way Enterprises, Inc. ("Aspen Way") and allege as follows:

## THE UNDERLYING ACTIONS

**A.    Byrd Action.**

1.    In May, 2011, Crystal Byrd and Brian Byrd, individually and on behalf of a putative class consisting of all customers of Aaron's and its franchisees who have purchased, leased, rented, or rented-to-own Aaron's computers and people who used said computers whose electronic communications and/or images were intercepted, sued Aspen Way, Aaron's, and other Aaron's franchisees in the United States District Court for the Western District of Pennsylvania (the "Byrd Action"). Statement of Stipulated Facts ("Stip. Facts") ¶ 1 (July 11, 2014) (Dkt.

#29) (attached as Ex. 1 hereto).  Thereafter, a Third Amended Class Action Complaint in the Byrd Action was filed on October 2, 2013.  *Id.* ¶ 2.

   2. In the Byrd Action, the Byrds (Wyoming residents) alleged they purchased their computer from an Aspen Way-owned Aaron's franchise in Wyoming.  Cho Decl. Ex. A ¶¶ 15, 118 (attached as Ex. 2 hereto).  The Byrd Action (Corrected) Third Amended Complaint alleges that Aaron's suggested that Aspen Way use DesignerWare's PC Rental Agent starting in 2007.  *Id.* ¶ 82.  PC Rental Agent allegedly allowed Aspen Way "to remotely and surreptitiously access, monitor, intercept, and/or transmit" personal information from rent-to-own computers.  *Id.* ¶ 84.  Through PC Rental Agent, Aspen Way and other Aaron's franchisees could remotely activate a built-in feature of the software called "Detective Mode," which enabled them, *inter alia*, to secretly take screen shots on the computers' webcams and capture users' keystrokes.  *Id.* ¶¶ 88, 89.  The information and images allegedly were collected and sent from a DesignerWare server in Pennsylvania to Aaron's franchisees, including Aspen Way, via email.  *Id.* ¶¶ 11, 89.  Aaron's allegedly consented to Aspen Way's use of and access to DesignerWare and/or PC Rental Agent websites on multiple occasions.  *Id.* ¶¶ 96, 97.

   3. The Byrd Action (Corrected) Third Amended Complaint asserts three counts against Aspen Way.  Stip. Facts ¶ 4.  Count I claims all

defendants violated the Electronic Communications Privacy Act, 18 U.S.C. § 2511 (the "ECPA").  *Id.* ¶ 5.  Specifically, this Count alleges that:

- Aspen Way violated Section 2511(a) of the ECPA by "intentionally collecting, gathering, intercepting, endeavoring to intercept, transmit, procure, store [sic] any other person to intercept or endeavor to intercept Plaintiffs' and Class members' electronic communications";

- Aspen Way violated Section 2511(c) by "intentionally collecting, transmitting, storing and disclosing, or endeavoring to disclose, to any other person, the contents of Plaintiffs and Class members' electronic communications, knowing or having reason to know that the information was obtained through the interception of Plaintiffs' and class members electronic communications;" and

- Aspen Way violated Section 2511(d) by "intentionally using or endeavoring to use, the contents of Plaintiffs' and class members electronic communications, knowing or having reason to know that the information was obtained through the interception of Plaintiffs' electronic communications."

Cho Decl. Ex. A ¶¶ 158-160.

    4.    Count II claims invasion of privacy against all defendants.  Stip. Facts ¶ 6.  Count III claims conspiracy on the part of all defendants.  *Id.* ¶ 7.  A

fourth cause of action, Count IV, claims aiding and abetting against Aaron's, Inc. only. *Id.* ¶ 8.

5. On March 31, 2014, the District Court dismissed Count II (Invasion of Privacy), Count III (State Law Conspiracy), and Count IV (Aiding and Abetting) against defendants Aaron's, Aspen Way and DesignerWare as not stating cognizable claims under Wyoming law, which the Magistrate Judge notes applies to the Byrd's common law claims. *Id.* ¶ 9; Cho Decl. Exs. B-C (Magistrate Order and District Court Order adopting Magistrate Order). Thus, the only Count remaining in the Byrd Action is Count I (Violation of the ECPA). Cho Decl. Exs. B-C.

6. By separate Order, dated March 31, 2014, the United States District Court for the Western District of Pennsylvania denied the Byrds' Motion for Class Certification. Stip. Facts ¶ 10. On June 20, 2014, the United States District Court for the Western District of Pennsylvania stayed the Byrd Action while the District Court's denial of class certification is on appeal to the Third Circuit Court of Appeals. Cho Decl. Ex. D.

**B. Washington Action.**

7. In October, 2013, the State of Washington sued Aspen Way in Spokane County Superior Court, Washington (the "Washington Action"). Stip. Facts ¶ 13. The State of Washington filed the Washington Action Complaint

against Aspen Way on October 18, 2013, in Spokane County, Washington. *Id.* ¶ 14.

8. The Washington Action Complaint alleges the following: Aspen Way operates rent-to-own stores in Washington and rents laptops to members of the public, which come pre-loaded with computer software known as PC Rental Agent. Cho Decl., Ex. E ¶ 4.1. PC Rental Agent made it possible to later install the optional feature known as Detective Mode at the rent-to-own store's discretion. *Id.* Aspen installed these software programs on its rental laptops in order to track their whereabouts. *Id.* ¶ 4.2. However, installing PC Rental Agent and Detective Mode software programs also gave Aspen Way the ability to record a monitored laptop user's keystrokes and on-screen images, and to take photographs using the computer's webcam. *Id.* The physical location of the computer can also be monitored. All of this is done without notice to the computer's user. *Id.*

9. All of Aspen Way's ten Washington locations purchased PC Rental Agent software licenses. *Id.* ¶ 4.3. Aspen Way stores requested installation and activation of the Detective Mode Feature on rented laptops running PC Rental Agent on at least 53 occasions since November 2010. *Id.* ¶ 4.4. Once Detective Mode had been installed, Aspen Way's Director of Operations activated the various stages of Detective Mode at will. *Id.* ¶¶ 4.4, 4.6. The PC Rental Agent and Detective Mode software relayed personally identifiable information to Aspen

Way's Washington rent-to-own stores via e-mail, without the knowledge or consent of the laptop users or laptop renters. *Id.* ¶¶ 4.7-4.8.

10. The State of Washington asserts four state statutory causes of action against Aspen Way: (1) Misrepresentation in Violation of the Consumer Protection Act (RCW 19.86.020); (2) Deceptive Collection of Personally Identifiable Information in Violation of the Computer Spyware Act (RCW 19.270.020(2)); (3) Deceptive Prevention of Efforts to Block the Functioning of Computer Software in Violation of the Computer Spyware Act (RCW 19.270.020(3) and RCW 19.270.020(11)(a)-(b)); and (4) Unfair Collection and Disclosure of Private and Confidential Information (RCW 19.86.020). Stip. Facts ¶ 15.

11. Counts I, II, III, and IV all allege that Aspen Way violated a state statute due to transmitting, collecting, disseminating, and distributing information. Cho Decl. Ex. E ¶¶ 5.2, 6.2, 7.3, 8.2. Counts II and III allege that Aspen Way violated Sections 19.270.020(2), (3), and (11) of the Washington Computer Spyware Act. Stip. Facts ¶ 15. Counts I and IV allege that Aspen Way violated Section 19.86.020 of the Washington Consumer Protection Act. *Id.*

12. In connection with its statutory claims, the State of Washington seeks declaratory and injunctive relief, civil penalties under the Consumer

Protection Act, damages pursuant to the Computer Spyware Act (up to $100,000 per violation), restitution to consumers, and attorney's fees and costs. *Id.* ¶ 16.

13. The Washington Attorney General and Aspen Way recently settled the Washington Action pursuant to a Consent Decree under which, *inter alia*, Aspen Way agreed to a $150,000 payment. Cho Decl. Ex. F. Liberty agreed to reimburse Aspen for the payment, and Aspen and Liberty agreed that neither party waived their respective reservation of rights and coverage positions being litigated in this action, which include, for Liberty, its right to seek recoupment of the settlement payment from Aspen upon a declaration of non-coverage. Cho Decl. Ex. Q.

## LIBERTY POLICIES AT ISSUE.

### A. Primary Policies.

14. Liberty (through General) issued CGL Policy No. 01-CI-310544-1 to Aspen Way, with a policy period of January 1, 2010 to January 1, 2011 (the "2010 Primary Policy"). Cho Decl. Ex. G. Thereafter, coverage was renewed under two additional CGL policies issued by American Economy: Policy No. 01-CI-310544-2, with a policy period of January 1, 2011 to January 1, 2012 (the "2011 Primary Policy"), and Policy No. 01-CI-310544-3, with a policy period of January 1, 2012 to January 1, 2013 (the "2012 Primary Policy") (collectively, the "Primary Policies"). *Id.* Exs. H-I.

15. Under the Primary Policies, Liberty must defend and indemnify Aspen Way only if the allegations in an underlying suit against Aspen Way falls within the scope of the coverage granted in the Primary Policies, and is not subject to any exclusion. *See id.* Ex. G, CGL Form, page 313 (LIBASP005063).

16. The Primary Policies grant coverage for liability to Aspen Way caused by "personal and advertising injury," which is defined as "injury, including consequential 'bodily injury,' arising out of one or more of various offenses." *See id*. page 327 (LIBASP005077). The insurance available for "personal and advertising injury" does not, however, apply to the following excluded type of conduct:

> **2. Exclusions**
>
> This insurance does not apply to:
>
> **a. Knowing Violation Of Rights Of Another**
>
> "Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".
>
> \*   \*   \*
>
> **p. Recording And Distribution Of Material Or Information In Violation Of Law**
>
> "Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:
>
> \*   \*   \*

> (4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

*Id.*, pages 318, 330 (LIBASP005068, LIBASP005080).

17. Exclusion (p) was amended by endorsement (CG 00 68 05 09). *Id.*, page 330 (LIBASP005080).

18. Separately, "Coverage A" of the Primary Policies provides coverage to Aspen Way for liability arising from "bodily injury" and "property damage" that occurs during the policy period. *See id.* page 313 (LIBASP005063).

### B. Umbrella Policies.

19. Plaintiff American States, issued umbrella coverage to Aspen Way under separate policies: Policy No. 01-SU-416966-10, with a policy period of January 1, 2010 to January 1, 2011 (the "2010 Umbrella Policy"); Policy No. 01-SU-416966-20, with a policy period of January 1, 2011 to January 1, 2012 (the "2011 Umbrella Policy"); and Policy No. 01-SU-416966-30, with a policy period of January 1, 2012 to January 1, 2013 (the "2012 Umbrella Policy") (collectively, the "Umbrella Policies"). Cho Decl. Exs. J-L.

20. Like the Primary Policies, under the Umbrella Policies, Liberty is required to defend and indemnify Aspen Way if an underlying suit against Aspen

Way falls within the scope of the coverage granted and is not subject to any exclusion or other defense to coverage, such as a breach of the conditions of the policy conditions.  *See id.* Ex. J, page 27 (LIBASP006407).

21. The Umbrella Policies also provide:

> This insurance is excess over, and shall not contribute with any other insurance. . . . When this insurance is excess, we will have no duty to defend the insured against any 'suit' if any other insurer has a duty to defend the insured against that 'suit.' If no other insurer defends, we will undertake to do so, but we will be entitled to your rights against all other insurers. . . . .

*See id.* page 33 (LIBASP006413).

22. The Umbrella Policies provide coverage to Aspen Way for liability caused by "advertising injury," "bodily injury," "personal injury," or "property damage," as defined in the policies. *See id.*, pages 39-42 (LIBASP006419-LIBASP006422). However, the insurance available for "advertising injury," "bodily injury," "personal injury," or "property damage" does not, however, apply to the following excluded type of conduct:

> **A.** "Bodily injury" or ''property damage" expected or intended from the standpoint of the insured.  This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.
>
> \*     \*     \*
>
> **N.** "Personal injury" or "advertising injury"
>
> **1.** Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another

and would inflict "personal injury" or "advertising injury";

*Id.*, pages 28, 30 (LIBASP006408, LIBASP006410).

23. The 2010 and 2011 Umbrella Policies contain Form Endorsement 21 64 02 09, which states:

> RECORDING AND DISTRIBUTION OF MATERIAL OR INFORMATION IN VIOLATION OF LAW EXCLUSION
>
> This endorsement modifies insurance provided under the following:
>
> > COMMERCIAL UMBRELLA LIABILITY COVERAGE FORM
>
> This insurance does not apply to any claim, loss or "suit" resulting from:
>
> \* \* \*
>
> **2.** "Personal injury" or "advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:
>
> \* \* \*
>
> **d.** Any federal, state or local statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, or FCRA and their amendments and additions, that collection, recording, sending, transmitting, communicating or distribution of material or information [sic].

(*Id.* Exs. J-K, pages 21, 15 (LIBASP006401, LIBASP006447).)

24. The underwriting intent of Endorsement 21-64-02-09 in the 2010 and 2011 Umbrella Policies is set forth in a "Notice To Policyholders" that

Plaintiffs' Statement of Undisputed Facts
-13-

1766269

was included with those Policies, placing the insured on notice that the Endorsement is intended to "more explicitly exclude liability coverage for . . . injury arising out of any action or omission that violates or is alleged to violate . . . federal, state or local statutes, ordinance or regulation concerning disposal and dissemination of personal information." *Id.* Exs. J-K, pages 23, 17 (LIBASP006403, LIBASP006449).

The 2012 Umbrella Policy contains Exclusion by Endorsement 21-64-07-11, which corrects the prior Umbrella Policies' typographical error and states (corrected language noted below in bold):

> RECORDING AND DISTRIBUTION OF MATERIAL OR INFORMATION IN VIOLATION OF LAW EXCLUSION
>
> This endorsement modifies insurance provided under the following:
>
> > COMMERCIAL UMBRELLA LIABILITY COVERAGE FORM
>
> This insurance does not apply to any claim, loss or suit resulting from:
>
> \*   \*   \*
>
> > **2.** Personal injury or advertising injury arising directly or indirectly out of any action or omission that violates or is alleged to violate:
>
> \*   \*   \*
>
> > **d.** Any federal, state or local statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, or FCRA and their amendments and additions, that ***addresses, prohibits, or limits the printing,***

> ***dissemination, disposal, collecting, recording, sending,
> transmitting, communicating or distribution of material
> or information.***

*Id.* Ex. L, page 23 (LIBASP006499).

      25.    The 2012 Umbrella Policy also contains same Notice (set forth above) included with the 2010-11 Umbrella Polies, as well as a separate "Notice" informing the insured that Endorsement 21-64-07-11 in the 2012 Umbrella Policy "adds language that was mistakenly omitted in the original version" of the Endorsement. The Notice also explains that the Exclusion set forth in Endorsement 21-64-07-11:

> will more explicitly exclude liability coverage for bodily
> injury, property damage, personal injury and advertising
> injury arising out of any action or omission that violates,
> or is alleged to violate, any other similar federal, state or
> local statute, ordinance or regulation that addresses,
> prohibits, or limits the printing, dissemination, disposal,
> collecting, recording, sending, transmitting,
> communicating or distribution of material or information.

*Id.* Ex. L, page 7 (LIBASP006483).

## ASPEN WAY'S TENDER TO LIBERTY.

      26.    In May 2011, Aspen Way demanded coverage from Liberty for the Byrd Action under the Primary Policies. On June 22, 2011, Liberty accepted the defense of the Byrd Action under a complete reservation of rights, and provided Aspen Way with independent counsel (at Liberty's expense) to defend Aspen Way and represent its interests. *Id.* Ex. M. Among the rights Liberty

reserved was the right to seek a judicial declaration that the claims against Aspen Way are not covered and, if so, to seek reimbursement for any defense and indemnity payments made on Aspen Way's behalf. *Id.*

        27.    On September 26, 2013, Aspen Way provided notice to Liberty that the Washington Attorney General had alerted Aspen Way that it intended to file suit. *Id.* Ex. N. Thereafter, Aspen Way tendered its claim for coverage to Liberty on October 29, 2013, after the Washington Complaint was filed. *Id.* Ex. O. After investigating the claim, on December 17, 2013, Liberty accepted the defense of the Washington Action under a complete reservation of rights, and agreed to pay for Aspen Way's independent Washington counsel. *Id.* Ex. P. Again, among other rights Liberty reserved was the right to initiate a declaratory judgment action and to seek reimbursement for defense and indemnity payments. *Id.*

DATED this 4th day of March, 2015.

                      **SHOOK, HARDY & BACON, L.L.P.**

By:    /s/  Amy Y. Cho
          Matthew O. Sitzer, Pro Hac Vice
          Amy Y. Cho, Pro Hac Vice
          SHOOK, HARDY & BACON, L.L.P.
            *Attorneys for Plaintiffs*

                      **MATOVICH, KELLER, & MURPHY, P.C.**

By:    /s/ Brooke B. Murphy
          Brooke B. Murphy
          Matovich, Keller & Murphy, P.C.
            *Attorneys for Plaintiffs*

INDEX OF EXHIBITS TO STATEMENT OF UNDISPUTED FACTS

**Exhibit 1**  Statement of Stipulated Facts

**Exhibit 2**  Declaration of Amy Y. Cho

> Exhibit A   The Byrd Action (Corrected) Third Amended Complaint, Case No. 11 CV 101 (W.D. PA).
>
> Exhibit B   Magistrate Order filed in The Byrd Action, Case No. 11 CV 101 (W.D. PA).
>
> Exhibit C   District Court Order filed in The Byrd Action, Case No. 11 CV 101 (W.D. PA).
>
> Exhibit D   Order filed in The Byrd Action, Case No. 11 CV 101 (W.D. PA).
>
> Exhibit E   Complaint for Injunctive and Other Relief in the Washington Action, Case No. 13204330-5 (State of Washington, Spokane County Superior Court).
>
> Exhibit F   Consent Decree in the Washington Action, Case No. 13204330-5 (State of Washington, Spokane County Superior Court).
>
> Exhibit G   Policy 01-CI-310544-1 (the "2010 Primary Policy").
>
> Exhibit H   Policy 01-CI-310544-2 (the "2011 Primary Policy").
>
> Exhibit I   Policy 01-CI-310544-3 (the "2012 Primary Policy").
>
> Exhibit J   Policy 01-SU-416996-10 (the "2010 Umbrella Policy").
>
> Exhibit K   Policy 01-SU-416996-20 (the "2011 Umbrella Policy").
>
> Exhibit L   Policy 01-SU-416996-30 (the "2012 Umbrella Policy").
>
> Exhibit M   Letter dated June 22, 2011 from Dan Fleming to Michele Braukmann.

Exhibit N    Letter dated September 26, 2013 from Michele Braukmann to Chrystina Hubbell.

Exhibit O    Letter dated October 29, 2013 from Michele Braukmann to Chrystina Hubbell.

Exhibit P    Letter dated December 17, 2013 from Chrystina Hubbell to Michele Braukmann.

Exhibit Q    Letter dated January 29, 2015 from Samantha Punch to Michele Braukmann.

# CERTIFICATE OF SERVICE

I hereby certify that on March 4, 2015, a copy of the foregoing was served on the following persons by CM/ECF:

1.   **Clerk, U.S. District Court**

2.   Michele L. Braukman/Adam Warren
     MOULTON BELLINGHAM, P.C.
     Suite 1900, Crown Plaza, P.O. Box 2559
     Billings, MT  59103-2559
     Michele.Braukmann@moultonbellingham.com
     Adam.Warren@moultonbellingham.com
     *Attorneys for Aspen Way Enterprises, Inc.*

3.   Laura J. Hanson, Esq.
     MEAGHER & GEER P.L.L.P
     33 South Sixth Street, Suite 4400
     Minneapolis, MN  55402
     lhanson@meagher.com
     *Attorneys for Hartford Fire Insurance Company*
     *Attorneys for Hartford Casualty Insurance Company*

**SHOOK, HARDY & BACON, L.L.P.**

By:   /s/  Amy Y. Cho
      Matthew O. Sitzer, Pro Hac Vice
      Amy Y. Cho, Pro Hac Vice
      SHOOK, HARDY & BACON, L.L.P.
      *Attorneys for Plaintiffs*

**MATOVICH, KELLER, & MURPHY, P.C.**

By:   /s/ Brooke B. Murphy
      Brooke B. Murphy
      Matovich, Keller & Murphy, P.C.
      *Attorneys for Plaintiffs*

1766269