**EXHIBIT P
to
CHO'S DECL.**



Liberty Mutual Insurance

Complex Special Liability Group
PO Box 515097
Los Angeles, CA 90051-5097
315-431-6297
(888)268-8840 Fax

December 17, 2013

Michele Braukmann
Moulton Bellingham Crowne Plaza, Suite 1900
P.O. Box 2559
Billings, MT 59103

VIA CERTIFIED MAIL AND FIRST CLASS MAIL

RE: *State of Washington v. Aspen Way Enterprises, Inc.*, Case No. 13204330-5, Superior Court, Spokane, Washington
 Insured: Aspen Way Enterprises
 Claim #: 430287364039
 Primary Policies: General Insurance Company, Policy No. 01-CI-310544-1, eff. 1/1/10-1/1/11;

 American Economy Insurance Company Policy No. 01-CI-310544-2, eff. 1/1/11-1/1/12; and

 American Economy Insurance Company Policy No. 01-CI-310544-3, eff. 1/1/12-1/1/13.

Dear Ms. Braukmann:

I am writing on behalf of General Insurance Company of America and American Economy Insurance Company (hereinafter together, "Liberty Mutual," "We" or "Our") in response to your October 29, 2013 letter, sent on behalf of your client, Aspen Way Enterprises, Inc. ("Aspen Way") requesting a defense and indemnity under the above-referenced primary general liability policies (the "Policies") for the above-referenced "Complaint for Injunctive and Other Relief" filed on October 18, 2013, by the Attorney General of the State of Washington in Superior Court in Spokane, Washington, Case No. 13204330-5 (hereinafter, the "Washington Action").

This letter responds to your request and, subject to the reservations and limitations set forth herein, Liberty Mutual agrees to provide a complete defense to Aspen Way under this reservation of rights and pursuant to the applicable terms in the Policies. Note that we will not pay defense fees or costs that were not incurred in the actual defense of the claims, nor will we pay for any fees or costs relating to any insurance coverage activities or advice. By accepting payment of defense fees, Aspen Way will be deemed to have accepted our provision of a defense subject to the reservations, terms, and conditions contained in this letter.

1

CONFIDENTIAL

LIBASP002981

By the phrase, "reservation of rights," we mean that all of Liberty Mutual's rights are fully reserved and expressly not waived, and any action taken by Liberty Mutual during or in connection with the defense, investigation, adjustment, claim handling, or settlement of the above-noted matter shall not in any manner prejudice the rights Liberty Mutual has under the Policies or at law. Aspen Way's rights are also reserved in the same manner. In other words, neither Liberty Mutual by its defense, investigation, adjustment, claim handling, or settlement of the matter, nor Aspen Way in granting permission to do so, waives any provision in the Policies, or relinquishes any rights, powers, privileges, conditions, or exclusions.

After careful review of the allegations made in the complaint filed in the Washington Action, we must advise you that there are allegations and damages alleged that fall outside the coverage afforded under the Policies. Therefore, while we will provide a defense under a reservation of rights to all the allegations, we intend to deny indemnity for the uncovered allegations and causes of action that result in a settlement or judgment.

We are directing this letter to you, as counsel for Aspen Way Enterprises. Please provide a copy to your client and confirm to us in writing that you have done so.

## FACTS

The Washington Action was filed on October 18, 2013, in Spokane County. The State of Washington alleges the following: Aspen Way operates rent-to-own stores in Washington and rents laptops to members of the public, which come pre-loaded with computer software known as PC Rental Agent (Washington Action Complt. ¶ 4.1.). PC Rental Agent makes it possible to later install the optional feature known as Detective Mode at the rent-to-own store's discretion. (Id.) Aspen installed these software programs on its rental laptops in order to track their whereabouts. (Id. ¶ 4.2.) However, installing PC Rental Agent and Detective Mode software programs also gives Aspen Way the ability to record a monitored laptop user's keystrokes and on-screen images, and to take photographs using the computer's webcam. (Id.) The physical location of the computer can also be monitored. All of this is done without notice to the computer's user. (Id.)

All of Aspen Way's ten Washington locations purchased PC Rental Agent software licenses. (Id. ¶ 4.3.) Aspen Way stores requested installation and activation of the Detective Mode Feature on rented laptops running PC Rental Agent on at least 53 occasions since November 2010. (Id. ¶ 4.4.) Once Detective Mode had been installed, Aspen Way's Director of Operations activated the various stages of Detective Mode at will. (Id. ¶¶ 4.4, 4.6.) The PC Rental Agent and Detective Mode software relayed personally identifiable information to Aspen Way's Washington rent-to-own stores via e-mail, without the knowledge or consent of the laptop users or laptop renters. (Id. ¶¶ 4.7-4.8.)

Based on these allegations, the State of Washington asserted four causes of action: (1) Misrepresentation in Violation of the Consumer Protection Act (RCW 19.86.020); (2) Deceptive Collection of Personally Identifiable Information in Violation of the Computer Spyware Act (RCW 19.270.020(2)); (3) Deceptive Prevention of Efforts to Block the Functioning of Computer Software in Violation of the Computer Spyware Act (RCW 19.270.020(3) and RCW 19.270.020(11)(a)-(b)); and (4) Unfair Collection and Disclosure of Private and Confidential Information (RCW 19.86.020). (Id. ¶¶ 5.1-8.4.) In doing so, the State of Washington seeks declaratory and injunctive relief, civil penalties under the Consumer Protection Act, statutory damages pursuant to the Computer Spyware Act (up to $100,000 per violation), restitution to consumers, and attorney's fees and costs. (Id. ¶¶ 9.3-9.6.)

We understand that, on November 21, 2013, Aspen Way filed a Notice of Removal, seeking removal of the Washington Action to the United States District Court for the Eastern District of Washington. Please inform us as to the status of that motion and the current venue of the Washington Action.

2

CONFIDENTIAL                                                                                                                     LIBASP002982

## THE POLICIES

We issued certain primary Commercial General Liability Policies to Aspen Way as follows:

**General Insurance Company Policy No. 01-CI-310544-1**, effective Jan. 1, 2010 to Jan. 1, 2011, with a $1,000,000 each occurrence limit, a $1,000,000 Personal and Advertising Injury limit, and a $2,000,000 general aggregate limit.

**American Economy Insurance Company Policy No. 01-CI-310544-2**, effective Jan. 1, 2011 to Jan. 1, 2012, with a $1,000,000 each occurrence limit, a $1,000,000 Personal and Advertising Injury limit, and a $2,000,000 general aggregate limit.

**American Economy Insurance Company Policy No. 01-CI-310544-3**, effective Jan. 1, 2012 to Jan. 1, 2013, with a $1,000,000 each occurrence limit, a $1,000,000 Personal and Advertising Injury limit, and a $2,000,000 general aggregate limit.

In order to understand the coverage provided under these Policies, set forth below are those policy provisions which we believe are relevant to this analysis. You also should review the portions of the Policies entitled "Commercial General Liability Coverage Form" (CG 00 01 012 07) in its entirety.

The Policies provide coverage as follows:

### SECTION I – COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III

   Limits Of Insurance; and

(2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

b. This insurance applies to "bodily injury" and "property damage" only if: (1) The "bodily injury" or "property damage" is caused by an "occurrence"

that takes place in the "coverage territory";

(2) The "bodily injury" or "property damage" occurs during the policy period;

and

3

(3) Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

(1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

(2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

(3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur. \*\*\*\*

e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury". \*\*\*

The Policies were amended under Form CG 00 68 05 09 to include the following exclusion:

q. Recording And Distribution Of Material Or Information In Violation Of Law

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

\*\*\*\*

(4) Any federal, state of local statute, ordinance or regulation, other than TCPA, CAN-SPAM Act of 2003 or FRCA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating, or distribution of material or information.

The Policies also provide coverage under COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY:

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and

4

CONFIDENTIAL
LIBASP002984

duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance ; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

Certain exclusions are present under Coverage B and may specifically limit coverage for this matter as follows:

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury."

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

\*\*\*\*

The Policies were amended under Form CG 00 68 05 09 to include the following exclusion:

**p. Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

\*\*\*\*

(4)  Any federal, state of local statute, ordinance or regulation. other than TCPA, CAN-SPAM Act of 2003 or FRCA and their amendments and additions, that addresses,

5

CONFIDENTIAL                                                                                                                                     LIBASP002985

prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating, or distribution of material or information.

Relevant terms used in the Policies are defined as follows:

### SECTION V – DEFINITIONS

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

> a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and
>
> b. Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

\*\*\*\*

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

\*\*\*\*

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\*\*\*\*

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

> a. False arrest, detention or imprisonment;
>
> b. Malicious prosecution;
>
> c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
>
> d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
>
> e. Oral or written publication, in any manner, of material that violates a person's right of privacy;
>
> f. The use of another's advertising idea in your "advertisement"; or
>
> g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

\*\*\*\*

17. "Property damage" means:

6

CONFIDENTIAL

LIBASP002986

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

## DISCUSSION AND ANALYSIS

The Policies, in the **Coverage A** policy part, provide coverage for claims for "bodily injury" and "property damage" caused by an "occurrence," as defined in the Policies and outlined above. It is evident, based on our review of the Washington Action that the State of Washington has not asserted any claims for "property damage" or "bodily injury" as those terms are defined, nor has any "occurrence" been alleged. **Accordingly, neither defense nor indemnity is available for the Washington Action under Coverage A of the Policies.** Please inform us in writing immediately if you disagree with our determination regarding the inapplicability of Coverage A, and if so, please provide us with all information you believe supports your position that Coverage A may apply. We reserve the right to reconsider our conclusion upon receipt of any new information you provide that might suggest a basis for coverage under this section of the Policies.

The Policies, in the **Coverage B** policy part, additionally provide coverage for "personal and advertising injury" as defined in the Policies. In order to find coverage under this section of the Policy, the insured must be alleged to have committed one of the enumerated offenses during the policy period that is not subject to an applicable exclusion. The Policies provide coverage for "personal and advertising injury," which is defined to include, in part, "[o]ral or written publication, in any manner, of material that violates a person's right of privacy." The complaint in the Washington Action includes allegations that could be construed to be encompassed by the definition of "personal and advertising injury." (*See* Washington Action Cmplt. ¶¶ 4.2, 4.7, 4.8.) It is on this basis that Liberty Mutual agrees to assume Aspen Way's defense.

However, we wish to advise you that the only causes of action brought by the State of Washington in the Washington Action relate to conduct that allegedly violates four Washington statutes: (1) Misrepresentation in Violation of the Consumer Protection Act (RCW 19.86.020); (2) Deceptive Collection of Personally Identifiable Information in Violation of the Computer Spyware Act (RCW 19.270.020(2)); (3) Deceptive Prevention of Efforts to Block the Functioning of Computer Software in Violation of the Computer Spyware Act (RCW 19.270.020(3) and RCW 19.270.020(11)(a)-(b)); and (4) Unfair Collection and Disclosure of Private and Confidential Information (RCW 19.86.020). (*See* Washington Action Cmplt. ¶¶ 5.1-8.4.) As applied to Aspen Way's alleged misconduct, each such Washington statute that Aspen Way is alleged to have violated "addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information." Accordingly, we reserve the right to withdraw from the defense and/or disclaim any duty to indemnify as per **Exclusion p.(4),** set forth above.

In connection with Counts II and III, the State of Washington alleges that Aspen Way acted intentionally or with reason to know. Accordingly, we reserve the right to withdraw from the defense and/or disclaim any duty to indemnify with regard to these Counts as per **Exclusions 2.a. and 2.b,** set forth above.

The allegations in the Washington Action suggest Aspen Way's conduct violating the aforementioned Washington statutes commenced in November 2010. To the extent that such alleged conduct commenced prior to 2010, or otherwise prior to the inception of the Liberty Mutual Policies, we reserve the right to withdraw from the defense and/or disclaim any duty to indemnify as per **Exclusion 2.c**, set forth above. **Given this Exclusion, and to the extent that the conduct alleged by the State of Washington commenced prior to January 1, 2010, we request that Aspen Way tender this claim to all carriers possibly affording coverage for this matter prior to the inception of the first of Liberty Mutual's above-enumerated Policies.**

Furthermore, the claims brought by the State of Washington involve equitable and injunctive relief and/or statutory damages and other civil fines and penalties. Please be advised that there are circumstances in which damages may be awarded that are not specifically excluded by the Policies, but which public policy prohibits indemnification by insurance companies. Please be advised that disgorgement of profits wrongfully obtained, restitution, statutorily-imposed damages, fines and penalties, and a multiplicity of damages designed to deter similar conduct, or intentionally caused damages may not be indemnified by insurance companies as a matter of public policy. Moreover, claims for purely non-economic relief, such as declaratory, injunctive and other equitable relief, as the Washington Action plainly alleges, are not considered damages under the Policy and thus are not covered. As such, we reserve the right withdraw from the defense and/or deny indemnity for these reasons as well.

In addition to the above-enumerated exclusions on other policy provisions, Liberty further reserves its rights based on the following:

- We reserve the right to deny coverage for damages other than those of "personal and advertising injury" as defined the Policies.

- We reserve the right to deny coverage for "personal and advertising injury" not caused by an offense arising out of your business and committed in the "coverage territory" during the policy period.

- We reserve the right to deny coverage for "personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury."

- We reserve the right to deny coverage for "personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

- We reserve the right to deny coverage for "personal and advertising injury" arising out of the infringement of copyright, other than infringement of copyright in your "advertisement."

- We reserve the right to deny coverage for "personal and advertising injury" for which the insured has assumed liability in a contract or agreement.

- We reserve the right to deny coverage for "personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in the insured's "advertisement."

- We reserve the right to deny coverage for persons or entities that are not insureds under the Policies.

8

CONFIDENTIAL                                                                                                         LIBASP002988

- If "willful acts of the insured" are not covered as a matter of law, pursuant to the terms of the Policies or as a matter of public policy, we reserve the right to deny coverage on that basis.

- We reserve the right to deny coverage to the extent that any of the alleged injuries arose out of conduct that is uninsurable as a matter of public policy.

- We reserve the right to deny coverage if there has been a misrepresentation in the procurement of any Policy.

- Our obligations, if any, are limited as set forth in the limits of liability provisions of the Policies. We reserve the right to deny or limit coverage consistent with those provisions.

- We have no obligation to any person or entity seeking coverage under the Policies if such person or entity fails to comply with the assistance and cooperation clause in the Policies.

- We reserve the right to deny coverage to the extent Aspen Way, or any person or entity acting on its behalf, makes any settlements or payments, or commits to making such payments without Liberty Mutual's prior authorization.

- We reserve the right to deny coverage if any applicable deductible or retention is not satisfied.

- Coverage may be limited by the "other insurance" provisions in the Policies, and we reserve the right to invoke the "other insurance" provisions contained in the Policies.

- We reserve the right to seek reimbursement of amounts paid in legal and other expenses, as well as indemnity costs, to the extent that the costs were incurred in defense, settlement or other resolution of uncovered claims.

- We reserve the right to withdraw from any agreement to pay defense costs or to allocate defense costs if it is determined that the Policies do not provide coverage or if all potentially covered claims are dismissed.

- We reserve the right to deny coverage on the basis of late notice or laches.

## CONCLUSION

As previously indicated, Liberty Mutual has agreed to provide Aspen Way with a complete defense in the Washington Action, subject to the reservations of rights contained herein. Please contact the undersigned at your earliest convenience to discuss setting up the necessary defense arrangements.

Although it has elected to assume the defense Aspen Way in connection with the Washington Action, Liberty Mutual is specifically reserving its rights to deny indemnity for the claims and damages not covered under the Policies. Liberty Mutual fully reserves the right to withdraw from the defense of this litigation at any point in time. If its own investigation, the discovery conducted in the defense of the insured, or information obtained from any source whatsoever reveals that there is no coverage and no potential for coverage under the policies, Liberty Mutual will withdraw from the defense of this litigation.

Liberty Mutual further reserves the right to dispute coverage with the insured and with any other insurance carrier and/or other interested parties. This may include the filing of an action for declaratory relief to determine the respective rights and obligations of Liberty Mutual, Aspen Way, and any third parties with respect to the contract of insurance. Liberty Mutual also reserves the right to commence litigation seeking other legal and/or equitable remedies in pursuing its rights with respect to the Policies.

9

CONFIDENTIAL                                                                                                                                        LIBASP002989

Please be additionally advised that Liberty Mutual expressly reserves its rights and does not waive any right to later seek reimbursement from the insured for indemnity payment and defense costs, including attorneys' fees and expert witness fees incurred and paid on behalf of the insured should it be determined that the allegations of the Washington Action are precluded from coverage. The defense afforded by Liberty Mutual is provided with the specific understanding that Liberty has reserved the right to obtain reimbursement of such indemnity payments (including contribution to settlement or satisfaction of judgment) and defense expenses (including attorneys' fees, cost, claims expenses, and other sums) from the insured.

Liberty Mutual is accepting the defense of this lawsuit under a complete reservation of all its rights. The above discussion of particular coverage issues is not necessarily exhausted. Rather, Liberty Mutual reserves all of its rights under the Policies and at law, specifically including the right to further amend its reservation of rights letter and assert other policy provisions and coverage defenses not set forth herein. Again, all of the rights of Liberty Mutual are fully reserved and expressly not waived in the Policies, and any action taken by Liberty Mutual during or in connection with the defense, investigation, adjustment, claim handling, or settlement of the matter shall not in any manner prejudice the rights of Liberty Mutual in the Policies are at law. Liberty Mutual acknowledges that Aspen Way's rights are similarly reserved.

Should you have any questions or concerns regarding anything stated within this letter, we request that you forward those concerns to the undersigned for consideration. Should you believe you have pertinent information that may impact our coverage investigation; we request and expect that you forward such information to the undersigned for immediate consideration.

Respectfully,

*Chrystina Hubbell*

Chrystina Hubbell, AIC
Sr. Technical Claim Specialist
Complex Claims – Special Liability Group

cc.   Hub International Mountain
      3533 Gabel Road
      Billings, MT 59102-7307

10

CONFIDENTIAL                                                                                                                    LIBASP002990